IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWAINE MCCLAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-CV-19-NJR-DGW |
| | ) |
| VIPIN SHAH, and | ) |
| WEXFORD MEDICAL SOURCES, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Vipin Shah and Wexford Health Sources, Inc.[1] (Docs. 53 and 54). For the reasons set forth below, the Court grants the motion.

### BACKGROUND

Plaintiff Dwaine McClay ("McClay") filed this action on January 6, 2016, alleging a violation of his civil rights under 42 U.S.C. §1983. McClay alleged in his complaint that he had suffered health problems as a result of consuming the soy-based diet served in prison and that the policy of only serving two meals per day at Pinckneyville Correctional Center deprived him of adequate food (Doc. 1). The Court conducted a threshold review pursuant to 28 U.S.C. 1915A, and McClay was allowed to proceed on the following claims:

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate name of the following defendant: "Wexford Medical Sources" should be "Wexford Health Sources, Inc."

**Count 1:** Defendants Shah and Wexford were deliberately indifferent to McClay's medical needs by failing to diagnose or treat the symptoms he attributes to his ongoing consumption of soy products, and by refusing to provide him with a soy-free diet, in violation of the Eighth Amendment;

**Count 2:** Defendants Shah and Lashbrook have been deliberately indifferent to McClay's basic need for a nutritionally adequate diet, by allowing him to go without food for prolonged periods during which he has suffered pain and weakness, in violation of the Eighth Amendment.

Count 2 was subsequently dismissed by the Court for failure to exhaust administrative remedies (Doc. 52, p. 3). Thus, Count 1 is the only claim that remains in this action.

At his deposition, McClay testified that he never saw Dr. Shah (in the context of being his patient) prior to filing his lawsuit (Doc. 54-1, 60:19-22), and that Dr. Shah never refused to order a thyroid test or a soy-free diet for him (Doc. 54-1, 61:13-14,18-21). McClay further testified that the reason he sued Dr. Shah was because he believed that Dr. Shah was responsible for reviewing and denying his requests to be seen in the healthcare unit (Doc. 54-1, 46:7-12). McClay admitted, however, that he does not actually know who was responsible for handling the sick call requests (Doc. 54-1, 47:12-13), and Dr. Shah testified that he had no role in reviewing such requests while at Pinckneyville (Doc. 54-3, ¶ 10).

As to Defendant Wexford, McClay admitted that he did not believe Wexford was responsible for developing a policy regarding inmate diets (Doc. 54-1, 63:6-8). McClay's only basis for suing Wexford was his belief that Wexford was responsible for running the healthcare unit, and thus it was responsible for denying his requests for care (Doc. 54-1, 67:5-8). It is undisputed, however, that Christine Brown was the Health Care

Unit Administrator at the relevant times and that she is employed by the Illinois Department of Corrections ("IDOC"), not Wexford (Doc. 54, ¶¶ 2, 3).

Finally, McClay's original complaint contained a signed declaration pursuant to Federal Rule of Civil Procedure 11 (Doc. 1, p. 9; Doc. 54-1, 88:7-17). But McClay admitted in his deposition that several of the documents he attached to the complaint were not authored by him and he was unaware of the truthfulness of those documents. Specifically, McClay attached two affidavits signed by Otto Gibbs and Gaton Mack. McClay admitted that he did not know either Gibbs or Mack, and he had no idea whether the information contained in their affidavits was truthful (Doc. 54-1, 82:12-24, 85:3-86:13). He further testified that he had not even fully read some of the other documents filed with his complaint (Doc. 54-1, 82:7-8). Finally, McClay admitted at his deposition that he was not aware of the soy content of any of the foods he obtained from the commissary and that his statement that he was "forced to eat soy in over 98% of the food" was simply a guess (Doc. 54-1; 40:7-41: 14).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

While the burden is on the moving party to show entitlement to summary judgment, Federal Rule of Civil Procedure 56(c)-(e), requires the non-moving party to properly address another party's assertion of fact. If a party fails to address any such assertion, the Court may consider the facts undisputed and can grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is so entitled. FED. R. CIV. P. 56(e)(2)-(3).

Here, a copy of the Motion for Summary Judgment was sent to McClay at Pinckneyville (Doc. 53, p. 4). Included with the motion was a Federal Rule of Civil Procedure 56 Notice (Docs. 55, p.4), which warned McClay that the failure to respond to a motion for summary judgment or address facts asserted in the motion could result in the Court considering those facts undisputed and may form the basis for granting summary judgment. Despite receiving such a warning, McClay did not file a response to the Motion for Summary Judgment. Thus, the Court finds the facts asserted in the Motion for Summary Judgment to be undisputed.

## DISCUSSION

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a

claim for deliberate indifference to a serious medical need, however, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate that he suffered from an objectively serious medical condition. *Id.* at 591-92. Second, the plaintiff must establish that the individual prison officials were deliberately indifferent to that condition. *Id.*

In order to be deliberately indifferent to a serious medical need, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Here, McClay admits that he never saw Dr. Shah and that he simply assumed Dr. Shah was responsible for denying his requests to be seen in the healthcare unit (Doc. 54-1, 10:19-22; Doc. 54-1, 47:12-13). Conversely, Dr. Shah testified that he was not responsible for reviewing sick call requests during his time as Pinckneyville's Medical Director (Doc. 54-3, ¶11). Thus, there is no evidence upon which a jury could find that Dr. Shah had any subjective knowledge that a serious medical condition existed, let alone that he disregarded it. *Farmer*, 511 U.S. at 837. Accordingly, the Court finds that Dr. Shah is entitled to summary judgment.

Similarly, McClay cannot sustain his claim against Wexford. McClay admitted that he did not believe Wexford was responsible for developing any policy regarding inmate diets (Doc. 54-1, 63:6-8). McClay's only basis for suing Wexford was his belief that Wexford was responsible for running the healthcare unit, and therefore responsible

for denying his requests for care (Doc. 54-1, 67:5-8). Corporations may be held liable for the promulgation of a policy or practice if it causes an underlying constitutional violation. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). The plaintiff must present evidence of such a policy or practice at the summary judgment stage, however, and he has the burden of showing the policy or custom was the moving force behind the alleged constitutional violation. *Grieveson v. Anderson*, 538 763, 771 (7th Cir. 2008).

Here, McClay's claim is that he was never seen for his soy-related medical complaints (Doc. 1, p. 6; Doc. 8, p. 3). McClay admitted at his deposition that he wrote three to four requests to be seen, but they were all directed to the healthcare unit; none of his requests were specifically directed to Wexford (Doc. 54-1, 58:1-11). It is undisputed that Christine Brown was the Health Care Unit Administrator at the relevant times and that she is employed by IDOC, not Wexford (Doc. 54, ¶¶ 2, 3; Doc 54-5, ¶¶ 4-5). Thus, the only evidence before the Court is that an IDOC employee, not a Wexford employee, was responsible for reviewing requests for sick call. Further, it is undisputed that Wexford does not have a policy against treating inmates for soy-related conditions (Doc. 54-5, ¶¶ 6-8). Because McClay cannot show that Wexford had a policy or practice that resulted in a constitutional violation, Wexford is entitled to summary judgment.

## Conclusion

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Vipin Shah and Wexford Health Sources (Docs. 53 and 54). This action is **DISMISSED with prejudice.** Judgment will be entered accordingly.

McClay is **ADVISED** that if he wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If McClay chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if McClay files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if McClay wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by McClay showing excusable neglect or good cause.

If McClay chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If McClay cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues McClay plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

DATED:   March 19, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**